No. 15-1551

# 𝔘𝔫𝔦𝔱𝔢𝔡 𝔖𝔱𝔞𝔱𝔢𝔰 𝔆𝔬𝔲𝔯𝔱 𝔬𝔣 𝔄𝔭𝔭𝔢𝔞𝔩𝔰
# 𝔣𝔬𝔯 𝔱𝔥𝔢 𝔖𝔦𝔵𝔱𝔥 𝔆𝔦𝔯𝔠𝔲𝔦𝔱

_____

THE SHANE GROUP INC., ET AL.,

*Plaintiffs-Appellees,*

v.

BLUE CROSS AND BLUE SHIELD OF MICHIGAN,

*Defendant-Appellee.*

_____

**On Appeal from the United States District Court
for the Eastern District of Michigan
in Case No. 2:10-cv-14360**

_____

**BRIEF OF APPELLANTS/OBJECTING CLASS MEMBERS
ADAC AUTOMOTIVE, ALMA PRODUCTS COMPANY, BAKER
COLLEGE, BORROUGHS CORPORATION, EAGLE ALLOY INC.,
FISHER & COMPANY INC., FOUR WINDS CASINO RESORT,
FRANKENMUTH BAVARIAN INN INC., GEMINI GROUP INC., GILL-
ROY'S HARDWARE/MORGAN PROPERTIES LLC, GRAND TRAVERSE
BAND OF OTTAWA AND CHIPPEWA INDIANS, HI-LEX
CORPORATION, HUIZENGA GROUP, KENT COMPANIES INC., LA
BELLE MANAGEMENT INC., MASTER AUTOMATIC MACHINE
COMPANY INC., MORBARK INC., PETOSKEY PLASTICS INC., SAF-
HOLLAND USA INC., STAR OF THE WEST MILLING COMPANY,
TARUS PRODUCTS INC., TERRYBERRY COMPANY LLC, THELEN
INC., TRILLIUM STAFFING SOLUTIONS, TRUSS TECHNOLOGIES,
AND WADE TRIM GROUP INC.**

_____

Bryan R. Walters
Perrin Rynders
Aaron M. Phelps
Vᴀʀɴᴜᴍ LLP
Bridgewater Place, P.O. Box 352
Grand Rapids, MI 49501-0352
Telephone: (616) 336-6000
E-mail: brwalters@varnumlaw.com

**Attorneys for Appellants/Objecting Class Members**

---

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

# Disclosure of Corporate Affiliations and Financial Interest

Sixth Circuit
Case Number:_____15-1551_____   Case Name:_Shane Group vs. Blue Cross Blue Shield

Name of counsel: __Bryan R. Walters_____

Pursuant to 6th Cir. R. 26.1,___ADAC Automotive_____
                                          *Name of Party*

makes the following disclosure:

1.   Is said party a subsidiary or affiliate of a publicly owned corporation? If Yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

> No

2.   Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome?  If yes, list the identity of such corporation and the nature of the financial interest:

> No.

### CERTIFICATE OF SERVICE

I certify that on _May 26,2015_____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

> s/_Bryan R. Walters_____
> ___P. O. Box 352_____
> ___Grand Rapids, MI  49501-0352_

This statement is filed twice: when the appeal is initially opened and later, in the principal briefs, immediately preceding the table of contents.  See 6th Cir. R. 26.1 on page 2 of this form.

6CA-1
8/08

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

# Disclosure of Corporate Affiliations and Financial Interest

Sixth Circuit
Case Number:_____15-1551_____          Case Name: Shane Group vs. Blue Cross Blue Shield

Name of counsel: __Bryan R. Walters_____

Pursuant to 6th Cir. R. 26.1, ___Alma Products Company_____
                                                    *Name of Party*

makes the following disclosure:

3.  Is said party a subsidiary or affiliate of a publicly owned corporation? If Yes, list below the
    identity of the parent corporation or affiliate and the relationship between it and the named
    party:

> No

4.  Is there a publicly owned corporation, not a party to the appeal, that has a financial
    interest in the outcome? If yes, list the identity of such corporation and the nature of the
    financial interest:

> No.

### CERTIFICATE OF SERVICE

I certify that on _May 26,2015_____ the foregoing document was served on all parties
or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by
placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

> s/ Bryan R. Walters
> P. O. Box 352
> Grand Rapids, MI  49501-0352

This statement is filed twice: when the appeal is initially opened and later, in the principal briefs,
immediately preceding the table of contents. See 6th Cir. R. 26.1 on page 2 of this form.

6CA-1
8/08

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

# Disclosure of Corporate Affiliations
# and Financial Interest

Sixth Circuit
Case Number:_____15-1551_____    Case Name: Shane Group vs. Blue Cross Blue Shield

Name of counsel: __Bryan R. Walters__

Pursuant to 6th Cir. R. 26.1, ___Baker College
                                    *Name of Party*

makes the following disclosure:

5.    Is said party a subsidiary or affiliate of a publicly owned corporation? If Yes, list below the
      identity of the parent corporation or affiliate and the relationship between it and the named
      party:

> No

6.    Is there a publicly owned corporation, not a party to the appeal, that has a financial
      interest in the outcome? If yes, list the identity of such corporation and the nature of the
      financial interest:

> No.

---

CERTIFICATE OF SERVICE

I certify that on  May 26,2015                          the foregoing document was served on all parties
or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by
placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

s/ Bryan R. Walters
P. O. Box 352
Grand Rapids, MI  49501-0352

---

This statement is filed twice:  when the appeal is initially opened and later, in the principal briefs,
immediately preceding the table of contents.  See 6th Cir. R. 26.1 on page 2 of this form.

6CA-1
8/08

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

# Disclosure of Corporate Affiliations and Financial Interest

Sixth Circuit
Case Number:_____15-1551_____    Case Name: Shane Group vs. Blue Cross Blue Shield

Name of counsel: __Bryan R. Walters__

Pursuant to 6th Cir. R. 26.1, ___Borroughs Corporation___
*Name of Party*

makes the following disclosure:

7.  Is said party a subsidiary or affiliate of a publicly owned corporation? If Yes, list below the
    identity of the parent corporation or affiliate and the relationship between it and the named
    party:

No

8.  Is there a publicly owned corporation, not a party to the appeal, that has a financial
    interest in the outcome? If yes, list the identity of such corporation and the nature of the
    financial interest:

No.

## CERTIFICATE OF SERVICE

I certify that on __May 26,2015_____ the foregoing document was served on all parties
or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by
placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

s/_Bryan R. Walters_____
___P. O. Box 352_____
___Grand Rapids, MI  49501-0352___

This statement is filed twice: when the appeal is initially opened and later, in the principal briefs,
immediately preceding the table of contents. See 6th Cir. R. 26.1 on page 2 of this form.

6CA-1
8/08

v

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

# Disclosure of Corporate Affiliations
# and Financial Interest

Sixth Circuit
Case Number:_____15-1551_____    Case Name: Shane Group vs. Blue Cross Blue Shield

Name of counsel: __Bryan R. Walters_____

Pursuant to 6th Cir. R. 26.1, ___Eagle Alloy Inc._____
                                          *Name of Party*

makes the following disclosure:

9.    Is said party a subsidiary or affiliate of a publicly owned corporation? If Yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

No

10.   Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome? If yes, list the identity of such corporation and the nature of the financial interest:

No.

### CERTIFICATE OF SERVICE

I certify that on _May 26,2015_____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

s/_Bryan R. Walters_____
P. O. Box 352
Grand Rapids, MI  49501-0352

This statement is filed twice:  when the appeal is initially opened and later, in the principal briefs, immediately preceding the table of contents.  See 6th Cir. R. 26.1 on page 2 of this form.

6CA-1
8/08

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

# Disclosure of Corporate Affiliations
# and Financial Interest

Sixth Circuit
Case Number:_____15-1551_____   Case Name: Shane Group vs. Blue Cross Blue Shield

Name of counsel: __Bryan R. Walters_____

Pursuant to 6th Cir. R. 26.1, ___Fisher & Company Inc._____
                                          *Name of Party*
makes the following disclosure:

11.  Is said party a subsidiary or affiliate of a publicly owned corporation? If Yes, list below the
     identity of the parent corporation or affiliate and the relationship between it and the named
     party:

| No |
|---|
|   |

12.  Is there a publicly owned corporation, not a party to the appeal, that has a financial
     interest in the outcome?  If yes, list the identity of such corporation and the nature of the
     financial interest:

| No. |
|---|
|   |

---

### CERTIFICATE OF SERVICE

I certify that on _May 26,2015_____ the foregoing document was served on all parties
or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by
placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

s/_Bryan R. Walters_____
P. O. Box 352
Grand Rapids, MI   49501-0352

---

This statement is filed twice:  when the appeal is initially opened and later, in the principal briefs,
immediately preceding the table of contents.  See 6th Cir. R. 26.1 on page 2 of this form.

6CA-1
8/08

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

# Disclosure of Corporate Affiliations and Financial Interest

Sixth Circuit
Case Number:_____15-1551_____          Case Name:_Shane Group vs. Blue Cross Blue Shield_

Name of counsel: __Bryan R. Walters_____

Pursuant to 6th Cir. R. 26.1, ___Four Winds Casino Resort_____
<center>Name of Party</center>
makes the following disclosure:

13.   Is said party a subsidiary or affiliate of a publicly owned corporation? If Yes, list below the
      identity of the parent corporation or affiliate and the relationship between it and the named
      party:

No

14.   Is there a publicly owned corporation, not a party to the appeal, that has a financial
      interest in the outcome?  If yes, list the identity of such corporation and the nature of the
      financial interest:

No.

<center>CERTIFICATE OF SERVICE</center>

I certify that on _May 26,2015_____ the foregoing document was served on all parties
or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by
placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

<center>s/_Bryan R. Walters_____
P. O. Box 352_____
Grand Rapids, MI  49501-0352_</center>

This statement is filed twice:  when the appeal is initially opened and later, in the principal briefs,
immediately preceding the table of contents.  See 6th Cir. R. 26.1 on page 2 of this form.

6CA-1
8/08

## UNITED STATES COURT OF APPEALS
### FOR THE SIXTH CIRCUIT

# Disclosure of Corporate Affiliations
# and Financial Interest

Sixth Circuit
Case Number:_____15-1551_____    Case Name: Shane Group vs. Blue Cross Blue Shield

Name of counsel:  __Bryan R. Walters_____

Pursuant to 6th Cir. R. 26.1, ___Frankenmuth Bavarian Inn Inc._____
                                         *Name of Party*

makes the following disclosure:

15.   Is said party a subsidiary or affiliate of a publicly owned corporation? If Yes, list below the
      identity of the parent corporation or affiliate and the relationship between it and the named
      party:

| |
|---|
| No |

16.   Is there a publicly owned corporation, not a party to the appeal, that has a financial
      interest in the outcome?  If yes, list the identity of such corporation and the nature of the
      financial interest:

| |
|---|
| No. |

---

### CERTIFICATE OF SERVICE

I certify that on _May 26,2015_____ the foregoing document was served on all parties
or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by
placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

              s/_Bryan R. Walters_____
                  P. O. Box 352
                  Grand Rapids, MI   49501-0352

---

This statement is filed twice:  when the appeal is initially opened and later, in the principal briefs,
immediately preceding the table of contents.  See 6th Cir. R. 26.1 on page 2 of this form.

6CA-1
8/08

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

# Disclosure of Corporate Affiliations
## and Financial Interest

Sixth Circuit
Case Number:_____15-1551_____          Case Name: Shane Group vs. Blue Cross Blue Shield

Name of counsel: __Bryan R. Walters_____

Pursuant to 6th Cir. R. 26.1, ___Gemini Group Inc._____
                                          *Name of Party*

makes the following disclosure:

17.   Is said party a subsidiary or affiliate of a publicly owned corporation? If Yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

No

18.   Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome? If yes, list the identity of such corporation and the nature of the financial interest:

No.

### CERTIFICATE OF SERVICE

I certify that on _May 26,2015_____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

s/_Bryan R. Walters_____
P. O. Box 352
Grand Rapids, MI  49501-0352

This statement is filed twice: when the appeal is initially opened and later, in the principal briefs, immediately preceding the table of contents.  See 6th Cir. R. 26.1 on page 2 of this form.

6CA-1
8/08

x

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

# Disclosure of Corporate Affiliations
# and Financial Interest

Sixth Circuit
Case Number:_____15-1551_____     Case Name: Shane Group vs. Blue Cross Blue Shield

Name of counsel:  __Bryan R. Walters_____

Pursuant to 6th Cir. R. 26.1, ___Gill-Roy's Hardware/Morgan Properties LLC_____
                                              *Name of Party*
makes the following disclosure:

19.   Is said party a subsidiary or affiliate of a publicly owned corporation? If Yes, list below the
      identity of the parent corporation or affiliate and the relationship between it and the named
      party:

   No

20.   Is there a publicly owned corporation, not a party to the appeal, that has a financial
      interest in the outcome?  If yes, list the identity of such corporation and the nature of the
      financial interest:

   No.

---

### CERTIFICATE OF SERVICE

I certify that on _May 26,2015_____ the foregoing document was served on all parties
or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by
placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

                      s/_Bryan R. Walters_____
                          P. O. Box 352
                          Grand Rapids, MI  49501-0352

---

This statement is filed twice:  when the appeal is initially opened and later, in the principal briefs,
      immediately preceding the table of contents.  See 6th Cir. R. 26.1 on page 2 of this form.

6CA-1
8/08

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

# Disclosure of Corporate Affiliations and Financial Interest

Sixth Circuit
Case Number:_____15-1551_____    Case Name:_Shane Group vs. Blue Cross Blue Shield

Name of counsel:  __Bryan R. Walters_____

Pursuant to 6th Cir. R. 26.1, ___Grand Traverse Band of Ottawa and Chippewa Indians____
*Name of Party*

makes the following disclosure:

21. Is said party a subsidiary or affiliate of a publicly owned corporation? If Yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

No

22. Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome?  If yes, list the identity of such corporation and the nature of the financial interest:

No.

## CERTIFICATE OF SERVICE

I certify that on _May 26,2015_____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

s/_Bryan R. Walters_____
P. O. Box 352
Grand Rapids, MI  49501-0352

This statement is filed twice:  when the appeal is initially opened and later, in the principal briefs, immediately preceding the table of contents.  See 6th Cir. R. 26.1 on page 2 of this form.

6CA-1
8/08

xii

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

# Disclosure of Corporate Affiliations and Financial Interest

Sixth Circuit
Case Number:____15-1551____        Case Name:_Shane Group vs. Blue Cross Blue Shield

Name of counsel:  __Bryan R. Walters_____

Pursuant to 6th Cir. R. 26.1,  __Hi-Lex Corporation_____
                                           *Name of Party*
makes the following disclosure:

23.   Is said party a subsidiary or affiliate of a publicly owned corporation? If Yes, list below the
      identity of the parent corporation or affiliate and the relationship between it and the named
      party:

> No

24.   Is there a publicly owned corporation, not a party to the appeal, that has a financial
      interest in the outcome?  If yes, list the identity of such corporation and the nature of the
      financial interest:

> No.

### CERTIFICATE OF SERVICE

I certify that on _May 26,2015_____ the foregoing document was served on all parties
or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by
placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

s/_Bryan R. Walters_____
P. O. Box 352
Grand Rapids, MI  49501-0352

This statement is filed twice:  when the appeal is initially opened and later, in the principal briefs,
immediately preceding the table of contents.  See 6th Cir. R. 26.1 on page 2 of this form.

6CA-1
8/08

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

# Disclosure of Corporate Affiliations and Financial Interest

Sixth Circuit
Case Number: _____ 15-1551 _____   Case Name: Shane Group vs. Blue Cross Blue Shield

Name of counsel: __Bryan R. Walters_____

Pursuant to 6th Cir. R. 26.1, __Huizenga Group_____
                                          *Name of Party*
makes the following disclosure:

25.   Is said party a subsidiary or affiliate of a publicly owned corporation? If Yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

| |
|---|
| No |

26.   Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome? If yes, list the identity of such corporation and the nature of the financial interest: |

| |
|---|
| No. |

| CERTIFICATE OF SERVICE |
|---|
| I certify that on _May 26,2015_____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.<br><br>s/_Bryan R. Walters_____<br>P. O. Box 352<br>Grand Rapids, MI  49501-0352 |

This statement is filed twice: when the appeal is initially opened and later, in the principal briefs, immediately preceding the table of contents. See 6th Cir. R. 26.1 on page 2 of this form.

6CA-1
8/08

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

# Disclosure of Corporate Affiliations and Financial Interest

Sixth Circuit
Case Number:_____15-1551_____          Case Name: Shane Group vs. Blue Cross Blue Shield

Name of counsel:   Bryan R. Walters

Pursuant to 6th Cir. R. 26.1,   Kent Companies Inc.
                                      *Name of Party*

makes the following disclosure:

27.   Is said party a subsidiary or affiliate of a publicly owned corporation? If Yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

No

28.   Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome?  If yes, list the identity of such corporation and the nature of the financial interest:

No.

## CERTIFICATE OF SERVICE

I certify that on  May 26,2015                        the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

s/ Bryan R. Walters
P. O. Box 352
Grand Rapids, MI   49501-0352

This statement is filed twice:  when the appeal is initially opened and later, in the principal briefs, immediately preceding the table of contents.  See 6th Cir. R. 26.1 on page 2 of this form.

6CA-1
8/08

xv

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

# Disclosure of Corporate Affiliations and Financial Interest

Sixth Circuit
Case Number: _____ 15-1551 _____     Case Name: Shane Group vs. Blue Cross Blue Shield

Name of counsel: __Bryan R. Walters__

Pursuant to 6th Cir. R. 26.1, __La Belle Management Inc.__
                                          *Name of Party*
makes the following disclosure:

29.  Is said party a subsidiary or affiliate of a publicly owned corporation? If Yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

No

30.  Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome? If yes, list the identity of such corporation and the nature of the financial interest:

No.

### CERTIFICATE OF SERVICE

I certify that on __May 26,2015__ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

s/_Bryan R. Walters__
P. O. Box 352
Grand Rapids, MI  49501-0352

This statement is filed twice: when the appeal is initially opened and later, in the principal briefs, immediately preceding the table of contents. See 6th Cir. R. 26.1 on page 2 of this form.

6CA-1
8/08

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

# Disclosure of Corporate Affiliations and Financial Interest

Sixth Circuit
Case Number: _____ 15-1551 _____    Case Name: Shane Group vs. Blue Cross Blue Shield

Name of counsel: __Bryan R. Walters__

Pursuant to 6th Cir. R. 26.1, __Master Automatic Machine Company Inc.__
                                    *Name of Party*
makes the following disclosure:

31.  Is said party a subsidiary or affiliate of a publicly owned corporation? If Yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

No

32.  Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome? If yes, list the identity of such corporation and the nature of the financial interest:

No.

### CERTIFICATE OF SERVICE

I certify that on __May 26,2015__ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

s/_Bryan R. Walters_
P. O. Box 352
Grand Rapids, MI   49501-0352

This statement is filed twice: when the appeal is initially opened and later, in the principal briefs, immediately preceding the table of contents. See 6th Cir. R. 26.1 on page 2 of this form.

6CA-1
8/08

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

# Disclosure of Corporate Affiliations
# and Financial Interest

Sixth Circuit
Case Number:_____15-1551_____         Case Name: Shane Group vs. Blue Cross Blue Shield

Name of counsel: __Bryan R. Walters_____

Pursuant to 6th Cir. R. 26.1, ___Morbark Inc._____
                                        *Name of Party*

makes the following disclosure:

33.    Is said party a subsidiary or affiliate of a publicly owned corporation? If Yes, list below the
       identity of the parent corporation or affiliate and the relationship between it and the named
       party:

| No |
|----|
|    |

34.    Is there a publicly owned corporation, not a party to the appeal, that has a financial
       interest in the outcome?  If yes, list the identity of such corporation and the nature of the
       financial interest:

| No. |
|-----|
|     |

### CERTIFICATE OF SERVICE

I certify that on  May 26,2015_____ the foregoing document was served on all parties
or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by
placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

                s/_Bryan R. Walters_____
                   P. O. Box 352
                   Grand Rapids, MI_49501-0352____

This statement is filed twice:  when the appeal is initially opened and later, in the principal briefs,
    immediately preceding the table of contents.  See 6th Cir. R. 26.1 on page 2 of this form.

6CA-1
8/08

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

# Disclosure of Corporate Affiliations
## and Financial Interest

Sixth Circuit
Case Number:_____15-1551_____          Case Name:_Shane Group vs. Blue Cross Blue Shield_

Name of counsel:  __Bryan R. Walters_____

Pursuant to 6th Cir. R. 26.1,  ___Petoskey Plastics Inc._____
                                            *Name of Party*
makes the following disclosure:

35.  Is said party a subsidiary or affiliate of a publicly owned corporation? If Yes, list below the
     identity of the parent corporation or affiliate and the relationship between it and the named
     party:

| No |
|----|
|    |

36.  Is there a publicly owned corporation, not a party to the appeal, that has a financial
     interest in the outcome?  If yes, list the identity of such corporation and the nature of the
     financial interest:

| No. |
|-----|
|     |

| CERTIFICATE OF SERVICE |
|------------------------|
| I certify that on _May 26,2015_____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record. |
| s/_Bryan R. Walters_____ |
| P. O. Box 352 |
| Grand Rapids, MI  49501-0352 |

This statement is filed twice:  when the appeal is initially opened and later, in the principal briefs,
immediately preceding the table of contents.  See 6th Cir. R. 26.1 on page 2 of this form.

6CA-1
8/08

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

# Disclosure of Corporate Affiliations and Financial Interest

Sixth Circuit
Case Number:_____15-1551_____        Case Name: Shane Group vs. Blue Cross Blue Shield

Name of counsel: __Bryan R. Walters_____

Pursuant to 6th Cir. R. 26.1, ___SAF-Holland USA Inc._____
                                            *Name of Party*
makes the following disclosure:

37.    Is said party a subsidiary or affiliate of a publicly owned corporation? If Yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

> SAF-Holland GmbH  -  subsidiary

38.    Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome? If yes, list the identity of such corporation and the nature of the financial interest:

> No.

---

### CERTIFICATE OF SERVICE

I certify that on  May 26,2015                              the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

s/ Bryan R. Walters
P. O. Box 352
Grand Rapids, MI  49501-0352

---

This statement is filed twice:  when the appeal is initially opened and later, in the principal briefs, immediately preceding the table of contents.  See 6th Cir. R. 26.1 on page 2 of this form.

6CA-1
8/08

xx

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

# Disclosure of Corporate Affiliations and Financial Interest

Sixth Circuit
Case Number: _____ 15-1551 _____      Case Name: Shane Group vs. Blue Cross Blue Shield

Name of counsel: __Bryan R. Walters_____

Pursuant to 6th Cir. R. 26.1, ___Star of the West Milling Company_____
                                   *Name of Party*

makes the following disclosure:

39.   Is said party a subsidiary or affiliate of a publicly owned corporation? If Yes, list below the
      identity of the parent corporation or affiliate and the relationship between it and the named
      party:

> No

40.   Is there a publicly owned corporation, not a party to the appeal, that has a financial
      interest in the outcome?  If yes, list the identity of such corporation and the nature of the
      financial interest:

> No.

---

### CERTIFICATE OF SERVICE

I certify that on _May 26,2015_____ the foregoing document was served on all parties
or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by
placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

s/_Bryan R. Walters_____
      P. O. Box 352
      Grand Rapids, MI   49501-0352

---

This statement is filed twice:  when the appeal is initially opened and later, in the principal briefs,
immediately preceding the table of contents.  See 6th Cir. R. 26.1 on page 2 of this form.

6CA-1
8/08

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

# Disclosure of Corporate Affiliations and Financial Interest

Sixth Circuit
Case Number: _____ 15-1551 _____     Case Name: Shane Group vs. Blue Cross Blue Shield

Name of counsel: __Bryan R. Walters_____

Pursuant to 6th Cir. R. 26.1, __Tarus Products Inc._____
                                         *Name of Party*
makes the following disclosure:

41.  Is said party a subsidiary or affiliate of a publicly owned corporation? If Yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

| No |
|---|
| |

42.  Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome? If yes, list the identity of such corporation and the nature of the financial interest:

| No. |
|---|
| |

| CERTIFICATE OF SERVICE |
|---|
| I certify that on _May 26,2015_____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.<br><br> s/_Bryan R. Walters_____<br> P. O. Box 352<br> Grand Rapids, MI  49501-0352 |

This statement is filed twice:  when the appeal is initially opened and later, in the principal briefs,
immediately preceding the table of contents.  See 6th Cir. R. 26.1 on page 2 of this form.

6CA-1
8/08

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

# Disclosure of Corporate Affiliations and Financial Interest

Sixth Circuit
Case Number: _____ 15-1551 _____     Case Name: Shane Group vs. Blue Cross Blue Shield

Name of counsel: __Bryan R. Walters__

Pursuant to 6th Cir. R. 26.1, ___Terryberry Company LLC___
                                    *Name of Party*

makes the following disclosure:

43.   Is said party a subsidiary or affiliate of a publicly owned corporation? If Yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

No

44.   Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome? If yes, list the identity of such corporation and the nature of the financial interest:

No.

## CERTIFICATE OF SERVICE

I certify that on _May 26,2015_____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

s/_Bryan R. Walters_____
    P. O. Box 352
    Grand Rapids, MI   49501-0352

This statement is filed twice:  when the appeal is initially opened and later, in the principal briefs, immediately preceding the table of contents.  See 6th Cir. R. 26.1 on page 2 of this form.

6CA-1
8/08

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

# Disclosure of Corporate Affiliations and Financial Interest

Sixth Circuit
Case Number: _____ 15-1551 _____    Case Name: Shane Group vs. Blue Cross Blue Shield

Name of counsel: __Bryan R. Walters__

Pursuant to 6th Cir. R. 26.1, __Thelen Inc.__
*Name of Party*

makes the following disclosure:

45.    Is said party a subsidiary or affiliate of a publicly owned corporation? If Yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

> No

46.    Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome? If yes, list the identity of such corporation and the nature of the financial interest:

> No.

### CERTIFICATE OF SERVICE

I certify that on _May 26,2015_ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

s/_Bryan R. Walters_
P. O. Box 352
Grand Rapids, MI  49501-0352

This statement is filed twice: when the appeal is initially opened and later, in the principal briefs, immediately preceding the table of contents. See 6th Cir. R. 26.1 on page 2 of this form.

6CA-1
8/08

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

# Disclosure of Corporate Affiliations and Financial Interest

Sixth Circuit
Case Number: _____15-1551_____    Case Name: Shane Group vs. Blue Cross Blue Shield

Name of counsel:   Bryan R. Walters

Pursuant to 6th Cir. R. 26.1,   Trillium Staffing Solutions
                                 *Name of Party*
makes the following disclosure:

47.  Is said party a subsidiary or affiliate of a publicly owned corporation? If Yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

No

48.  Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome?  If yes, list the identity of such corporation and the nature of the financial interest:

No.

### CERTIFICATE OF SERVICE

I certify that on  May 26,2015                 the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

s/  Bryan R. Walters
P. O. Box 352
Grand Rapids, MI   49501-0352

This statement is filed twice:  when the appeal is initially opened and later, in the principal briefs, immediately preceding the table of contents.  See 6th Cir. R. 26.1 on page 2 of this form.

6CA-1
8/08

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

# Disclosure of Corporate Affiliations and Financial Interest

Sixth Circuit
Case Number:_____15-1551_____　　　　Case Name:　Shane Group vs. Blue Cross Blue Shield

Name of counsel:　__Bryan R. Walters_____

Pursuant to 6th Cir. R. 26.1,　__Truss Technologies_____
　　　　　　　　　　　　　　　　　　　　　　*Name of Party*
makes the following disclosure:

49.　Is said party a subsidiary or affiliate of a publicly owned corporation? If Yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

> No

50.　Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome? If yes, list the identity of such corporation and the nature of the financial interest:

> No.

---

### CERTIFICATE OF SERVICE

I certify that on　May 26,2015_____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

s/　Bryan R. Walters_____
P. O. Box 352_____
Grand Rapids, MI　49501-0352_____

---

This statement is filed twice:  when the appeal is initially opened and later, in the principal briefs, immediately preceding the table of contents.  See 6th Cir. R. 26.1 on page 2 of this form.

6CA-1
8/08

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

# Disclosure of Corporate Affiliations and Financial Interest

Sixth Circuit
Case Number:_____15-1551_____    Case Name: Shane Group vs. Blue Cross Blue Shield

Name of counsel:  Bryan R. Walters

Pursuant to 6th Cir. R. 26.1,  Wade Trim Group Inc.
*Name of Party*
makes the following disclosure:

51.  Is said party a subsidiary or affiliate of a publicly owned corporation? If Yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

No

52.  Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome?  If yes, list the identity of such corporation and the nature of the financial interest:

No.

---

### CERTIFICATE OF SERVICE

I certify that on  May 26,2015                          the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

s/ Bryan R. Walters
P. O. Box 352
Grand Rapids, MI  49501-0352

---

This statement is filed twice:  when the appeal is initially opened and later, in the principal briefs, immediately preceding the table of contents.  See 6th Cir. R. 26.1 on page 2 of this form.

6CA-1
8/08

## <u>TABLE OF CONTENTS</u>

<div align="right"><u>Page</u></div>

TABLE OF AUTHORITIES .............................................................xxx

STATEMENT IN SUPPORT OF ORAL ARGUMENT.................................. xxxii

JURISDICTIONAL STATEMENT .......................................................1

STATEMENT OF ISSUES FOR REVIEW....................................................2

STATEMENT OF THE CASE ............................................................3

STATEMENT OF FACTS ................................................................5

    I.      The Parties.....................................................................5

          A.    The Self-Insured Appellants ....................................5

          B.    The Plaintiffs ....................................................6

          C.    Blue Cross .........................................................6

    II.     Hospital Care in Michigan .................................................6

    III.    The Most Favored Nation Agreements ..................................7

    IV.    Procedural History...........................................................9

SUMMARY OF ARGUMENT ...........................................................15

ARGUMENT       ........................................................................17

    I.      Standard of Review ..........................................................17

    II.     The Settlement Is Unfair, Unreasonable, and Inadequate.................19

          A.    The Settlement Fund is Grossly Inadequate. ...........................19

          B.    The District Court Failed to Carefully Scrutinize the Settlement...................................................................23

               1.    The Likelihood of Success on the Merits Does Not Favor Settlement...........................................................23

               2.    The Complexity, Expense, and Likely Duration of the Litigation Does Not Weigh in Favor of Approval of the Settlement............................................27

               3.    The Amount of Discovery Engaged in by the Parties Does Not Favor Settlement..................................28

               4.    The Opinions of Class Counsel and Class Representatives Should Not Be Given Significant Weight Due to the Preferential Treatment Afforded to Class Counsel and Class Representatives in the Settlement. ...................................................29

               5.    The Reaction of Absent Class Members Demonstrates that the Proposed Settlement Is Unfair, Unreasonable, and Inadequate. ...........................30

<div align="center">xxviii</div>

|   |   | 6. | Public Interest Factors Do Not Weigh in Favor of the Settlement. ..................................................................32 |
|   |   | 7. | There is a Substantial Risk of Fraud or Collusion in the Settlement. ..............................................................32 |
|   | III. | The Court Record Should Have Been Unsealed Prior to the Fairness Hearing. ............................................................................33 |
|   | IV. | The Claims Process is Unreasonably Burdensome. .............................37 |
|   | V. | The Settlement Gives Preferential Treatment to the Named Plaintiffs and Class Counsel. .............................................................41 |
|   |   | A. | The Settlement Pays an Excessive Amount to Class Counsel as a Percentage of the Overall Settlement. .................41 |
|   |   | B. | The Amount of Incentive Awards Gives Preferential Treatment to the Named Plaintiffs. ............................................42 |

CONCLUSION   ...................................................................................................43

RULE 32(a)(7)(C) CERTIFICATION ...................................................................45

CERTIFICATE OF SERVICE ...............................................................................46

DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS ............47

xxix

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Baker v. Dolgen Corp. Inc.*
    No. 2:10-cv-199, 2000 WL 166257 (E.D. Va. Jan. 19, 2011) .....................35

*Granada Invest. Inc. v. DWG Corp.*
    962 F.2d 1203 (6th Cir. 1992) .......................................................27

*Greenberg v. Procter & Gamble Co.,*
    724 F.3d 713 (6th Cir. 2013) .......................................... 17, 18, 19, 30, 42, 43

*Health Alliance Plan of Michigan v. Blue Cross Blue Shield of Michigan*
    No. 2:14-cv-13788 (E.D. Mich. Oct 1, 2014). ..............................................31

*In re BankAmerica Corp. Securities Litigation*
    210 F.R.D. 694 (E.D. Mo. 2002).....................................................35

*In re Domestic Air Transp. Antitrust Litig.*
    144 F.R.D. 421 (N.D. Ga. 1992) ....................................................35

*In re Knoxville News-Sentinel Co. Inc.*
    723 F.2d 470 (6th Cir. 1983) .......................................................33

*In re Wireless Telephone Federal Cost Recovery Fees Litigation*
    396 F.3d 922 (8th Cir. 2005) .......................................................35

*Press-Enterprise Co. v. Superior Court*
    478 U.S. 1 (1986)...................................................................34

*Smith v. SEC*
    129 F.3d 356 (6th Cir. 1997) .......................................................33

*Tri-County Wholesale Distribs., Inc. v. The Bellas Co.*
    *No. 10-4202,* 2012 WL 248357 (6th Cir. June 29, 2012)..............................34

*UAW v. Gen. Motors Corp.*
    497 F.3d 615 (6th Cir.2007) ........................................... 17, 18, 23

*United States v. Amodeo*
    71 F.3d 1044 (2d Cir. 1995) ........................................................34

*United States v. Blue Cross Blue Shield of Michigan*
    No. 2:10-cv-14155 (E.D. Mich. Oct. 18, 2010) ........................................9, 24

*Vassalle v. Midland Funding LLC*
    708 F.3d 747 (6th Cir. 2013) ..................................................... 18, 19, 42, 43

*Williams v. Vukovich*
    720 F.2d 909 (6th Cir. 1983) .........................................................................19

## **Statutes**

15 U.S.C. § 15 ................................................................................................ 20, 27
MCL 500.3405a ............................................................................................. 10, 25

## **Rules**

Fed. R. Civ. P. 23(e)(1)(C) ...................................................................................17

## <u>STATEMENT IN SUPPORT OF ORAL ARGUMENT</u>

Appellants request oral argument because the class action settlement being appealed is a matter of substantial public interest, implicating the rights of an estimated seven million potential class members.  The claims of the class members are potentially worth billions of dollars.  Oral argument may aid the Court in reaching a more informed and just determination on a matter of significant public interest.

## <u>JURISDICTIONAL STATEMENT</u>

The District Court exercised jurisdiction under 28 U.S.C. §§ 1331, 1337(a), and 1367.

This Court's jurisdiction is based on 28 U.S.C. § 1291, which provides for jurisdiction over an appeal from a final decision of a United States District Court. The District Court entered final judgment on March 31, 2015.  Appellants timely filed their Notice of Appeal on April 29, 2015.

## <u>STATEMENT OF ISSUES FOR REVIEW</u>

1.    Is the amount of the settlement fair, reasonable, and adequate upon careful scrutiny?

2.    Did the Appellants have sufficient access to key documents in the court record to make their objections and meaningfully participate in the fairness hearing?

3.    Is the claims process for class members fair, reasonable, and adequate?

4.    Does the settlement give preferential treatment to class counsel and the named Plaintiffs?

## STATEMENT OF THE CASE

Defendant Blue Cross and Blue Shield of Michigan ("Blue Cross") is accused of a massive scheme to fix prices for hospital care in Michigan over the past decade. Plaintiffs allege that Blue Cross entered into "Most Favored Nation" Agreements ("MFN Agreements") with over 70 Michigan hospitals. In the MFN Agreements, Blue Cross agreed to increase the amount it paid hospitals for hospital services, in exchange for the hospitals agreeing that they would charge other insurers at least as much as they charge Blue Cross.

Plaintiffs allege that the MFN Agreement scheme increased the amount paid for hospital services by over seven million individuals, self-insured entities, and insurance companies throughout Michigan (the class members) by an average of 16 percent from 2006 to 2014. If Plaintiffs' allegations are true, the MFN Agreement scheme cost class members over $13 billion in additional hospital care expenses since 2006.

Faced with the potential for billions of dollars of liability, Blue Cross was understandably eager to settle the lawsuit. The District Court approved a settlement of the lawsuit for only $30 million. Of the $30 million settlement fund, the District Court approved approximately $15 million to go to class counsel, reimbursement of class counsel for expert witness fees, the named Plaintiffs for "incentive awards," and the claims administrator to cover expenses associated with

3

the settlement. This leaves a net settlement fund of only $15 million for approximately seven million potential class members.

The settlement is not fair, reasonable, or adequate. The meager settlement amount, in light of the massive potential liability Blue Cross faces, is only fair if the class members have a <u>very</u> low likelihood of success on the merits, such that a meager recovery is better for the class than no recovery at all. However, the record strongly suggests that the class members have a substantial chance of success on the merits. The parties have not met their burden of demonstrating otherwise. Nor has the District Court found otherwise.

Not only is the amount of the settlement fund woefully inadequate, but the District Court failed to meet its obligation to carefully scrutinize the settlement. Instead, the District Court engaged in a cursory analysis of the settlement, giving far too much deference to the opinion of class counsel, who stands to recover almost half of the settlement fund in the settlement.

The District Court's consideration of the fairness of the settlement was further hindered because the key documents on which the settlement was based – most importantly, the report of Plaintiffs' expert – were filed completely under seal. As such, these documents were not available for the Appellants to reference – or attempt to refute – in their objections or at the fairness hearing.

Furthermore, the claims process under the settlement is unduly burdensome, requiring class members to submit detailed claims forms with information that is not necessary to process their claims. This has deterred countless potential class members from submitting claims. For the millions of potential class members who are insured by Blue Cross or whose self-insured plans are administered by Blue Cross, Blue Cross can determine claim eligibility and calculate the claims amount without the need for a claims form.

Finally, the settlement gives preferential treatment to class counsel and the individual Plaintiffs. Almost half of the settlement fund is to be paid to class counsel. Moreover, under the settlement, the individual Plaintiffs were awarded incentive payments that far exceed the amounts they would otherwise be paid as class members. The settlement should be rejected and the matter remanded to the District Court for further proceedings.

## STATEMENT OF FACTS

### I. THE PARTIES

#### A. THE SELF-INSURED APPELLANTS

This appeal is filed on behalf of 26 self-insured businesses with over 5,000 health plan participants ("the Self-Insured Appellants") who paid for health care services at Michigan hospitals since 2006. Joint Objection to Proposed Settlement, RE 161, PgID 4653. Each of the Self-Insured Appellants operates a health care plan that was administered by Defendant Blue Cross. The Self-Insured Appellants

are among the estimated seven million individuals, self-insured entities, and insurers who are covered by the settlement. Plaintiff's Motion for Final Approval of Settlement, RE 169, PgID 5314.

### B.    THE PLAINTIFFS

Plaintiffs are a collection of individuals, self-insured plans, and jointly administered Taft-Hartley plans who paid for hospital services in Michigan since 2006. Consol. Am. Compl., ¶¶ 19-24, RE 72, PgID 889-892.

### C.    BLUE CROSS

Defendant Blue Cross is the dominant health care insurer in Michigan. Blue Cross has a market share in the commercial health insurance market exceeding 60 percent statewide. *Id*. ¶ 8, PgID 886.

## II.    HOSPITAL CARE IN MICHIGAN

Hospital care is a massive industry in Michigan. On average, approximately $26 billion is spent on hospital care at Michigan hospitals annually. Center for Medicare and Medicaid Services, Data on Hospital Care Expenditures, by State, RE 161-1, PgID 4706. Approximately 39 percent of hospital expenses are paid for by individuals, self-insured plans, and insurance companies (*i.e.*, the class members). Center for Medicare and Medicaid Services, Data on Hospital Care Expenditures, By Source of Funds, RE 161-2, PgID 4708. As such, class members

paid an estimated $10 billion annually for hospital care in Michigan,[1] or an estimated $85 billion for hospital care between January 1, 2006 and June 23, 2014 (the period covered by the settlement).[2]

## III.  THE MOST FAVORED NATION AGREEMENTS

Beginning in 2006, Blue Cross entered into agreements with at least 70 Michigan hospitals (the "Most Favored Nation" or "MFN" Agreements).  Consol. Am. Compl. ¶ 2, RE 72, PgID 885.  Under the MFN Agreements, the hospitals agreed to charge other insurers at least as much as they charged Blue Cross or, in some cases, more than they charged Blue Cross.  In exchange, Blue Cross agreed to pay higher amounts to those hospitals.  *Id.* ¶ 3.

As alleged in the Consolidated Amended Complaint, "[i]nstead of using its market position as Michigan's largest commercial health insurer and negotiate against the hospital's proposed price increases, [Blue Cross] accepted these increases as a means to secure the MFN provision . . . to impair its rivals, and maintain and enhance its position as the dominant commercial health insurer in Michigan."  *Id.* ¶ 4.

---

[1] $26 billion annual expenditures x 0.39 (percent paid for by class members) = $10.14 billion annually paid by class members for hospital care.

[2] $10 billion annual expenditures x 8.5 years = $85 billion in total expenditures on hospital care by class members over the settlement period.

7

As a result of the MFN Agreement scheme, the amount paid by class members for hospital services in Michigan increased dramatically. The Consolidated Amended Complaint alleges that the MFN Agreements increased the average price for hospital services by approximately 16 percent. *Id.* ¶ 5, PgID 886.

A 16 percent increase in hospital charges equates to an over <u>$13 billion</u> increase in the amount paid by class members for hospital services during the period covered by the settlement:

| | |
|---|---|
| $26 billion | Average annual expenditures on hospital care at Michigan hospitals[3] |
| x 39% | Percentage of hospital expenditures paid for by class members[4] |
| x 16% | Percent increase in hospital expenditures caused by MFN Agreement scheme[5] |
| x 8.5 | Number of years covered by settlement[6] |
| $13.79 billion | Additional amount paid by class members for hospital services as result of the MFN Agreement scheme. |

---

[3] Center for Medicare and Medicaid Services, Data on Hospital Care Expenditures, by State, RE 161-1, PgID 4706.

[4] Center for Medicare and Medicaid Services, Data on Hospital Care Expenditures, by Source of Funds, RE 161-2, PgID 4708.

[5] Consol. Am. Compl. ¶ 5, RE 72, PgID 886.

[6] Class Action Settlement Agreement ¶ ¶ 58-59, RE 148-1, PgID 4235-4236.

## IV.    PROCEDURAL HISTORY

On October 18, 2010, after an extensive investigation, the United States Department of Justice filed a civil complaint against Blue Cross seeking injunctive relief to block the enforcement of Blue Cross's MFN Agreements with Michigan hospitals as violative of federal and state antitrust laws. *United States v. Blue Cross Blue Shield of Michigan*, No. 2:10-cv-14155 (E.D. Mich. Oct. 18, 2010). Plaintiffs, The Shane Group, Inc. and Bradley A. Venaberg filed their class-action antitrust complaint against Blue Cross 11 days later, relying extensively on the allegations in the DOJ complaint.

Other potential class members, most notably the Aetna family of insurance companies, have also filed related antitrust lawsuits against Blue Cross.  Aetna alone alleged that it suffered over $700 million in damages as a result of the MFN Agreements.  When trebled under federal and state antitrust laws, this results in a potential damages claim for Aetna of over $2 billion.  Supplemental Disclosures of Plaintiff Aetna, Inc., RE 161-3, PgID 4710-4712.

Several other class action lawsuits against Blue Cross were also filed.  The class action cases were consolidated, interim class counsel was appointed, and a Consolidated Amended Complaint was filed in June of 2012.  Consol. Am. Compl., RE 72, PgID 884-935.

9

In July of 2012, Blue Cross filed a motion to dismiss the Consolidated Amended Complaint, RE 80, PgID 1002-1018. The District Court denied Blue Cross's motion to dismiss by opinion and order dated November 30, 2012, holding that "the Class Plaintiffs have stated sufficient facts to allege plausible claims of injury under an antitrust case." Op. at 9, RE 102, PgID 1273.

By March of 2013, the Michigan legislature was concerned enough about the anti-competitive effect on hospital costs of Blue Cross's MFN Agreements that it explicitly banned such agreements. *See* MCL 500.3405a. This lead to the DOJ dismissing its complaint against Blue Cross without prejudice, as the DOJ effectively obtained through legislation the injunctive relief it was seeking in its lawsuit against Blue Cross. Stipulated Motion and Brief to Dismiss Without Prejudice, RE 161-7, PgID 4732-34.

After the denial of the motion to dismiss and the dismissal of the DOJ complaint, the Parties spent most of 2013 engaged in discovery. Plaintiffs' motion for class certification, which was filed entirely under seal, was filed on October 21, 2013. RE 133, PgID [sealed]. Blue Cross's response in opposition was filed entirely under seal in February of 2014. RE 139, PgID [sealed]. Expert discovery closed in March of 2014 and a jury trial was scheduled for January 20, 2015.

At the end of expert discovery, Blue Cross filed a *Daubert* motion to exclude the testimony of Plaintiffs' damages expert. Motion to Exclude Expert

10

Testimony of Dr. Jeffrey Leitziner, RE 140, PgID [sealed].  Again, this motion was filed entirely under seal.  Before a response in opposition was filed by Plaintiffs, Blue Cross and Plaintiffs' counsel began settlement negotiations.

On June 23, 2014, the Parties reached a proposed settlement.  The settlement called for the release of all claims for damages caused by the MFN Agreements by the over seven million individuals, self-insured entities, and insurance companies that paid for hospital care in Michigan between January 1, 2006 and the settlement date of June 23, 2014.  Class Action Settlement Agreement ¶¶ 58-59, RE 148-1, PgID 4235-4236.

In exchange, Blue Cross agreed to reimburse class members between 1 percent and 3.5 percent of their hospital claims between 2006 and 2014.  However, the settlement provided that Blue Cross's total liability in the settlement would be capped at $29.99 million.  Of that approximately $30 million gross settlement fund, the proposed settlement also provided that up to one-third of the settlement fund ($10 million) could be apportioned to class counsel, that Plaintiffs could be reimbursed for all expert and other expenses, that up to $50,000 could be apportioned to "incentive awards" to each of the named Plaintiffs, and that $1 million would be pre-approved for the claims administrator for expenses associated with administering the settlement. *Id* ¶¶ 29, 35, 71, RE 148-1, PgID 4228, 4229, 4239.  The District Court preliminarily approved the proposed settlement three

11

days later and scheduled a fairness hearing concerning the proposed settlement for November 12, 2014. Order Granting Preliminary Approval to Proposed Class Settlement, RE 151, PgID 4417-4425.

The Self-Insured Appellants received notice of the proposed settlement in July and August of 2014. Upon investigation, the Self-Insured Appellants learned that many of the court documents it wanted to review to assess the strength of the class members' claims and the amount of potential damages, in order to determine whether to participate in the settlement, object, or opt out, were filed under seal in their entirety with the District Court. Among the significant court filings that were filed under seal in their entirety with the District Court were the following:

1.  *Opposition to Motion to Add and Drop Named Plaintiffs for the Proposed Class*, RE 127, PgID [sealed]. This brief includes 21 exhibits from Blue Cross, including a number of e-mails and deposition transcript exhibits that likely contain information relevant to an assessment of the proposed settlement, including the likelihood of success on the merits and/or the amount of potential damages.

    In particular, pages 11 through 13 of Blue Cross's opposition appear to include a recitation of facts concerning the impact on competition and costs of the MFN Agreements. However, all of the supporting factual information was redacted from the version of the opposition brief that was eventually provided to counsel for the Self-Insured Appellants. *See* Opp'n Mot. Add & Drop Named Pls. for Proposed Class (redacted), RE 166-4, PgID 5247-5251.

2.  *Motion for Class Certification and Appointment of Class* Counsel, RE 133, PgID [sealed]. This motion and supporting brief includes 90 different exhibits that, presumably, were presented to the Court as justification for why the class action should proceed and for why Plaintiffs' counsel should be approved as class counsel.

12

In the redacted version of the motion and brief provided to the Self-Insured Appellants, almost the entire Statement of Facts was redacted, including the facts that demonstrated that the MFN Agreements resulted in higher reimbursement rates to hospitals, and therefore higher costs for hospital care paid by class members. *See* Mot. Class Certification & Appointment of Class Counsel (redacted), RE 166-5, PgID 5253-5279.

3. *Response to Motion for Class Certification and Appointment of Class Counsel*, RE 139, PgID [sealed].  Blue Cross's response to the Motion for Class Certification and Appointment of Class Counsel, including the 42 exhibits that Blue Cross presented for the Court's consideration in response to the class certification motion, was also filed entirely under seal.

    Blue Cross provided a redacted version to counsel for the Self-Insured Appellants.  Again, Blue Cross's redacted response removed all of the relevant facts that Blue Cross believes rebuts the factual allegations supporting class certification.  Resp. Mot. for Class Certification & Appointment of Class Counsel (redacted).  RE 166-6, PgID 5281-5286.

4. *Motion to Exclude the Expert Testimony of Dr. Jeffrey Leitziner,* RE 140, PgID [sealed].  Blue Cross' *Daubert* motion challenging the damages testimony of Plaintiffs' expert was filed entirely under seal.  In the redacted version ultimately produced by Blue Cross, almost all of the substantive information concerning the analysis by Plaintiffs' expert was redacted, including the entirety of Plaintiffs' expert report and Blue Cross's counter-expert report.  *See* Mot. Exclude Expert Test. Dr. Jeffrey Leitzner (redacted), RE 166-7, PgID 5288-5294.

As a result, the Self-Insured Appellants took two actions.  First, they filed an objection to the proposed settlement on September 24, 2014.  RE 161, PgID 4648-4735.  Second, they approached both Plaintiffs' counsel and Blue Cross's counsel about gaining access to the sealed documents in order to aid their assessment of their objection and prepare for the fairness hearing.

13

Plaintiffs' counsel and Blue Cross's counsel agreed to provide redacted versions of the sealed documents. However, as discussed above, those redacted versions were so highly redacted that they excluded any meaningful information relating to the merits of the lawsuit, including any information concerning the damages report of Plaintiffs' expert. As a result, the Self-Insured Appellants filed a motion to intervene for the limited purpose of unsealing these court records on October 20, 2104. RE 166, PgID 5199-5294.

At the fairness hearing, at which the motion to intervene to unseal records was also argued, the Self-Insured Appellants sought some form of access to the sealed documents. As an alternative to unsealing the records, counsel for the Self-Insured Appellants also suggested either (1) an in-camera review of the sealed documents by the District Court; or (2) an attorneys-eyes only designation of the sealed documents by counsel for the Self-Insured Appellants. Fairness Hearing Tr. at 21-27, RE 199, PgID 6382-6388.

In an opinion and order dated March 31, 2015, the District Court denied the Self-Insured Appellants' motion to intervene to access the sealed records, overruled the objections to the proposed settlement of the Self-Insured Appellants and other objectors, and approved the proposed settlement. 3/31/15 Opinion and Order, RE 213, PgID 6969-7017. The Self-Insured Appellants filed their Notice of Appeal on April 29, 2015. RE 219, PgID 7034-7035.

# SUMMARY OF ARGUMENT

The grounds for appeal by the Self-Insured Appellants are as follows:

**1.    The settlement is woefully inadequate.**  Plaintiffs alleged that MFN Agreements between Blue Cross and Michigan hospitals increased the amount paid by class members for hospital services by approximately 16 percent–over $13 billion – during the eight-and-a-half years covered by the settlement.

Blue Cross agreed in the settlement to refund class members between 1 percent and 3.5 percent of the money they paid to Michigan hospitals during the time period covered by the settlement.  Using the parties' own agreed-upon refund amount, in order to pay a 1-percent refund to class members, the total amount of the settlement fund should have been approximately $850 million.  However, the gross settlement fund was capped at $30 million, of which only a net amount of $15 million would actually be distributed to class members.  The amount of the settlement fund is woefully inadequate.

The settlement fund can only be considered reasonable if the class members have a very low likelihood of success on the merits.  However, the record strongly suggests that the class members had a viable claim against Blue Cross and a meaningful likelihood of success on the merits.  Neither class counsel nor Blue Cross presented evidence demonstrating that the class members' claims were so weak that such a meager settlement was in the best interest of the class members.

Rather than carefully scrutinizing the proposed settlement, the District Court engaged in only a cursory analysis of the reasonableness of the proposed settlement.  The District Court made no independent assessment of the likelihood of success of Plaintiffs' claims, instead making generic statements about the complexity of antitrust cases and deferring completely to class counsel's opinion that the settlement was fair.  Similarly, the District Court did not carefully scrutinize the amount of potential damages Plaintiffs might recover, instead accepting, without any substantive analysis, the opinion of Plaintiffs' damages expert.

**2.    The key documents on which the settlement is based should have been made available to the objectors.**  The key substantive documents necessary to fully assess the fairness of the settlement, including in particular Plaintiffs' expert report that was relied on by the District Court as a primary basis for approving the settlement, were filed entirely under seal and were not available for public review.  The efficacy of the fairness hearing, and the entire objection

15

process, was seriously hindered by the lack of access to this information by class members.  The parties did not meet their burden of demonstrating that the settlement is fair, reasonable, and adequate.

**3.    The claims process is unnecessarily burdensome.**  The claims process is unnecessarily burdensome and has deterred countless potential class members from submitting claims.  Moreover, for the millions of potential class members who are individually insured by Blue Cross or who are self-insured plans administered by Blue Cross, a claims form is completely unnecessary.  Blue Cross has superior access to the information necessary to calculate the claims of class members whose health care is managed by Blue Cross.

**4.    The settlement gives preferential treatment to Plaintiffs' counsel and the named Plaintiffs.**  When contrasted with the net settlement amount to be distributed to class members, the amount of attorneys' fees and expenses to be paid to class counsel is excessive and creates a conflict of interest and a disincentive for class counsel to adequately represent the interests of class members. Similarly, the incentive awards to the named Plaintiffs far exceed the amount they would otherwise receive as class members, thus creating a conflict of interest and a disincentive for the named Plaintiffs to represent the interests of class members.

In short, the settlement is a good deal for Blue Cross, Plaintiffs' counsel, and the named Plaintiffs.  It is a bad deal for the seven million potential class members, who will only receive perfunctory relief and would be much better served if their antitrust claims proceeded toward trial.  The settlement should be overturned and the matter remanded to the District Court for further proceedings.

# ARGUMENT

## I.     STANDARD OF REVIEW

Before a district court approves a class action settlement, it must find that the settlement is "'fair, reasonable, and adequate.'"  *UAW v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir.2007)(quoting Fed. R. Civ. P. 23(e)(1)(C)).   "The burden of proving the fairness of the settlement is on the proponents."  *Greenberg v. Procter & Gamble Co. (In re Dry Max Pampers Litig.)*, 724 F.3d 713, 719 (6th Cir. 2013).  A district court's approval of a class action settlement is reviewed for an abuse of discretion.  *Id.* at 717.

Despite appeal of class action settlements being subject to an abuse of discretion standard on appeal, this Court has recently vacated two class action settlements approved by district courts within this circuit.  In doing so, this Court emphasized that district courts must <u>carefully scrutinize</u> proposed class action settlements:

> Class-action settlements are different from other settlements. The parties to an ordinary settlement bargain away only their own rights— which is why ordinary settlements do not require court approval. In contrast, class-action settlements affect not only the interests of the parties and counsel who negotiate them, but also the interests of unnamed class members who by definition are not present during the negotiations. And thus there is always the danger that the parties and counsel will bargain away the interests of unnamed class members in order to maximize their own.
>
> ***
>
> Hence-unlike in virtually every other kind of case—in class-action settlements the district court cannot rely on the adversarial process to

protect the interests of the persons most affected by the litigation—
namely, the class. Instead, the law relies upon the fiduciary
obligations of the class representatives and, especially, class counsel,
to protect those interests. And that means the <u>courts must carefully
scrutinize whether those fiduciary obligations have been met</u>.

*Id.* at 715, 717–18 (quotation omitted).

This Court has established two different frameworks for carefully
scrutinizing the fairness, reasonableness, and adequacy of proposed class action
settlements. In *UAW*, this Court identified seven factors for consideration in
assessing whether a proposed class action settlement is fair, reasonable, and
adequate:

> (1) the risk of fraud or collusion;
> (2) the complexity, expense and likely duration of the litigation;
> (3) the amount of discovery engaged in by the parties;
> (4) the likelihood of success on the merits;
> (5) the opinions of class counsel and class representatives;
> (6) the reaction of absent class members; and
> (7) the public interest.

*Vassalle v. Midland Funding LLC*, 708 F.3d 747, 754 (6th Cir. 2013)(citing *UAW*,
497 F.3d at 631).

This Court has also rejected proposed class action settlements that give
preferential treatment to either the named plaintiffs or to class counsel. "Although
not included in the seven UAW factors, in evaluating the fairness of a settlement
[the Sixth Circuit has] also looked to whether the settlement gives preferential
treatment to the named plaintiffs while only perfunctory relief to unnamed class

members." *Id.* at 755 (quoting *Williams v. Vukovich*, 720 F.2d 909, 925 n.11 (6th Cir. 1983)). "[S]uch inequities in treatment make a settlement unfair." *Id.* "The same is true of a settlement that gives preferential treatment to class counsel; for class counsel are no more entitled to disregard their fiduciary responsibilities than class representatives are." *Greenberg*, 724 F.3d at 718 (quotation omitted).

## II.   THE SETTLEMENT IS UNFAIR, UNREASONABLE, AND INADEQUATE.

### A.   THE SETTLEMENT FUND IS GROSSLY INADEQUATE.

Plaintiffs allege that the MFN Agreements between Blue Cross and Michigan hospitals violated federal antitrust laws by fixing prices, resulting in an increase of the cost of hospital care in Michigan since 2006 by an average of approximately 16 percent. This equates to an estimated total of $13 billion of additional payments for hospital care by class members since 2006 as a result of the MFN Agreement scheme.

The settlement provides that class members shall be refunded one percent of their payments to most Michigan hospitals since 2006. *See* Class Action Settlement Agreement, Proposed Plan of Allocation, Category 2, RE 148-1, PgID 4289. For payments to certain specific hospitals, class members shall be refunded 3.5 percent of their payments to those particular hospitals. *Id.*, Category 1.

At first blush, this appears to be a reasonable compromise of the lawsuit. The MFN Agreements are alleged to have increased the cost of hospital services in

Michigan by approximately 16 percent. Consol. Am. Compl. ¶ 5(B), RE 72, PgID 886. Refunding class members between 1 percent and 3.5 percent of their hospital expenditures would provide some meaningful compensation to class members who have overpaid for hospital services, but would protect Blue Cross from the potential of a much larger judgment against it if the trier of fact were to find that the MFN Agreements unlawfully increased hospital expenses by 16 percent. Blue Cross would also avoid the risk of treble damages and payment of Plaintiffs' attorneys' fees that Blue Cross would face in a trial on the merits of Plaintiffs' antitrust claims. *See* 15 U.S.C. § 15.

Class members paid over $85 billion for hospital care during the time period covered by the settlement. As such, simple math dictates that in order to provide a one-percent refund of the hospital payments made by class members during the settlement period, $850 million must be refunded to the class.

However, the settlement caps the amount paid by Blue Cross into the settlement fund at $29,990,000.[7] Moreover, the settlement, deducts from the $30 million gross settlement amount: (1) $10 million in attorneys' fees for class counsel; (2) $3.5 million for expenses incurred by class counsel, primarily for Plaintiffs' expert; (3) over $150,000 in incentive awards to the Plaintiffs; and (4) $1

---

[7] For ease of discussion, the Self-Insured Appellants will round the amount of the gross settlement fund to $30 million.

million in expenses for administering the proposed settlement.[8]  Once these items are deducted from the gross settlement amount, the net settlement amount available to reimburse class members is approximately $15 million.

A $15 million net settlement fund is wholly inadequate to reimburse the class members.  In order to refund class members one percent of their hospital expenditures—the refund rate agreed to by Blue Cross and class counsel as the basis for their settlement—the settlement fund should be at least $850 million— over 50 times the amount of the net settlement fund available to the class members.

Under the settlement, class members would, on average, be refunded $1 for every $5,681 they spent at a Michigan hospital over the last eight and a half years. Put another way, dividing the $15 million net settlement amount among the seven million potential class members results in an average settlement of just over $2 per potential member of the class.

The settlement fund represents nothing more than a nuisance-value settlement amount.  The implication that Blue Cross and the class counsel tried to create, that the settlement constitutes a one-percent refund of hospital expenditures to class members, is completely misleading and illusory.

---

[8]  The actual award is for $3,499,893.02 of expenses, $9,996,667.00 of attorneys' fees, and $165,000 in incentive awards to the named Plaintiffs.  Opinion at 34-45, RE 213, PgID 7002-7013.

In approving the proposed settlement, the District Court relied heavily on the opinion of Plaintiffs' expert that the damages for class members totaled only $118 million. Op. at 27, RE 213, PgID 6995. ("In light of Plaintiffs' expert's analysis as to damages, the Court finds the settlement amount reached by the parties as fair in light of any success the Plaintiffs may obtain on the merits of the case"). However, the District Court failed to undertake any level of scrutiny, much less carefully scrutinize, whether this damages report actually reflects the class members' best-case scenario for damages.

As discussed above, basic math based on publicly available data demonstrates that, if the MFN Agreements had increased hospital expenses by even one percent annually (the percentage agreed to by Blue Cross and class counsel as the basis for the settlement), that would have resulted in $850 million in damages to class members. The District Court's opinion does not address this obvious, common-sense rebuttal to the Plaintiffs' "best case scenario" for damages of $118 million.

Moreover, the District Court's analysis ignores the fact that, if successful, class members would be entitled to treble damages, plus attorneys' fees, on their antitrust claims. As such, even if the District Court was correct in accepting the $118 million damages number from Plaintiffs' expert, that $118 million damage number should have been trebled, plus attorneys' fees, in determining how much

22

the class members might recover at trial. With treble damages plus attorneys' fees, even using the damages number in Plaintiffs' expert report, class members' potential recovery at trial would have approached $400 million. The District Court failed to carefully scrutinize why a $15 million net settlement recovery to the class members was fair, reasonable, and adequate to class members in light of a potential $400 million recovery (or more) at trial.

## B. THE DISTRICT COURT FAILED TO CAREFULLY SCRUTINIZE THE SETTLEMENT.

### 1. The Likelihood of Success on the Merits Does Not Favor Settlement.

As the District Court recognized, "[t]he main question in approving a class settlement is whether the settlement is fair in light of plaintiff's likelihood of success on the merits." Op. at 26, RE 213, PgID 6994 (quotation omitted). The Court "cannot judge the fairness of a proposed compromise without weighing the plaintiff's likelihood of success on the merits against the amount and form of the relief offered in the settlement." *UAW*, 497 F.3d at 631 (quotation omitted).

Given the billions (or, at a minimum, hundreds of millions) of dollars of potential liability faced by Blue Cross, the settlement, which provides a total net recovery to the seven million potential class members of $15 million ($2 per potential class member), is only reasonable if the Plaintiffs' likelihood of success on the merits is <u>exceedingly</u> small.

23

Much of the evidence needed to assess the Plaintiffs' likelihood of success was filed under seal and was not discussed in the District Court's opinion. This itself demonstrates that the parties have not met their burden of demonstrating the reasonableness, fairness, or adequacy of the settlement. It also demonstrates that the District Court did not carefully scrutinize the fairness of the settlement.

The information that is publicly available strongly suggests that the class members have a substantial likelihood of success on the merits. First, the evidence supporting Blue Cross's antitrust violations were determined to be significant enough that the United States Department of Justice, after significant investigation, brought a federal court complaint against Blue Cross alleging that the MFN Agreements violated federal antitrust law. *United States v. Blue Cross Blue Shield of Michigan*, No. 2:10-cv-14155 (E.D. Mich. Oct. 18, 2010). The allegations in the DOJ complaint are thorough and specific, showing that the DOJ undertook a detailed investigation of the merits before deciding to bring its antitrust lawsuit against Blue Cross. Indeed, most of the allegations in the Consolidated Amended Complaint in this case are based on the DOJ complaint.

Second, the Michigan legislature was concerned enough about the anti-competitive effect on hospital costs of Blue Cross's MFN Agreements with Michigan hospitals to explicitly ban such agreements by legislation passed in

March 2013.  *See* MCL 500.3405a.  This is very strong evidence of the anti-competitive nature of the MFN Agreements.

Third, the DOJ dismissed its federal court complaint against Blue Cross without prejudice only because the Michigan legislature passed the statute outlawing the MFN Agreements.  The DOJ effectively attained through legislation the injunctive relief that the DOJ sought against Blue Cross in the lawsuit.  Stip. to Dismiss Without Prejudice, RE 161-7, PgID 4732-4734.

Fourth, the District Court has not granted a dispositive motion in favor of Blue Cross in this consolidated class action lawsuit, the related Aetna lawsuit, or the original DOJ lawsuit, despite each of these cases being filed several years ago.  If the antitrust claims concerning the MFN Agreements had no likelihood of success on the merits, these cases would have been dismissed on dispositive motion long ago.

Finally, in Plaintiffs' motion for preliminary approval of the settlement, Plaintiffs offered little more than generic statements to the Court about litigation risk and statistics about settlement amounts in other unrelated antitrust class actions lawsuits.  In contrast, the information specific to this case strongly suggests that Plaintiffs have a substantial likelihood of success on the merits.

The District Court engaged in almost no discussion or analysis of the Plaintiffs' likelihood of success on the merits.  There is no discussion in the District

25

Court's opinion of the relative strength or weakness of the class members' claims. Instead, the District Court's opinion relies on generic platitudes about how antitrust litigation is "complex" and "very expensive to litigate" such that there is "significant risk that class members would receive nothing without a settlement." Op. at 23, 26, RE 213, PgID 6991, 6994.

Even more troubling is that the District Court, throughout its opinion, abandoned its own obligation to carefully scrutinize the settlement, instead relying heavily on the opinion of class counsel that the settlement amount was fair. *Id*. at 28, PgID 6996 ("Class Counsel and the Named Plaintiffs in this action all support the settlement in this case. Deference is given to their opinion . . . the Court must weigh this factor significantly in their favor").

When the evidence concerning the likelihood of success on the merits is weighed against the potentially massive liability facing Blue Cross, including the possibility of treble damages and attorneys' fees, it is obvious that the settlement is grossly unreasonable. Class members have almost nothing to lose—and everything to gain—by going forward with trial. The settlement is not fair, reasonable, or adequate, and should not have been approved by the District Court.

## 2. The Complexity, Expense, and Likely Duration of the Litigation Does Not Weigh in Favor of Approval of the Settlement.

In determining the reasonableness of the settlement, it is appropriate for the Court to consider "the risk associated with the expense and complexity of litigation." *Granada Invest. Inc. v. DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir. 1992). There is no question that antitrust litigation of this size and scope is a complex and expensive process that can take several years to resolve. The District Court held that this factor weighed in favor of approving the settlement. Op. at 23-24, RE 213, PgID 6991-6992.

However, the risk associated with the expense and complexity of this lawsuit is mitigated by several factors in this case. First, the bulk of the work necessary to get the case ready for trial has already been done. Blue Cross's motion to dismiss was denied. Discovery in this case is largely complete. Trial was set for January 2015 before this proposed settlement was reached between the parties. Accordingly, although antitrust litigation is complex, expensive, and takes time, those are largely "sunk costs" at this point.

More importantly in this context, if the Plaintiffs prevail at trial on their federal antitrust claims, they are entitled to both treble damages and recovery of their attorneys' fees and costs incurred in the litigation. 15 U.S.C. § 15. As such,

there is substantially less risk to the Plaintiffs in continuing to litigate rather than settle than in other contexts.

Indeed, to the extent Plaintiffs are likely to succeed on their claims if brought to trial, it is Blue Cross that bears far greater litigation risk. Blue Cross bears the risk of not only paying its attorneys' fees in continuing to defend the claims, but also paying treble damages and Plaintiffs' attorneys' fees and costs if Plaintiffs are successful at trial. This is a "bet the company" case for Blue Cross. This is not a case where the class members' interest in avoiding the potential future costs of continuing to litigate weighs in favor of settlement.

### 3.    The Amount of Discovery Engaged in by the Parties Does Not Favor Settlement.

The Court may also consider is the amount of discovery engaged in by the parties under the theory that in situations where the parties have conducted substantial discovery, the parties can make a more informed decision as to whether settlement is appropriate. It appears that Plaintiffs engaged in a very significant amount of discovery in this case.

However, neither Plaintiffs' nor Blue Cross's submissions in support of the proposed settlement included any analysis of the evidence uncovered during discovery. The District Court's opinion also contains no discussion or analysis of the extent to which discovery has (1) confirmed Plaintiffs' allegations, (2) enhanced or developed additional information in support of Plaintiffs' allegations,

or (3) identified weaknesses in Plaintiffs' case that might motivate settlement. Without careful scrutiny of the information obtained during discovery, the mere fact that substantial discovery has occurred does not weigh in favor of approving the settlement.

### 4.    The Opinions of Class Counsel and Class Representatives Should Not Be Given Significant Weight .

One of the factors this Court may consider in deciding whether the settlement is reasonable is the opinion of class counsel and class representatives concerning the settlement.  Obviously, class counsel and class representatives support the settlement.

The District Court relied heavily on the opinion of class counsel that the settlement was reasonable.  "Deference is given to their opinion . . . the Court must weigh this factor significantly in favor of settlement."  Op. at 28, RE 213, PgID 6996.

However, particularly in circumstances such as this, where class counsel and the class representatives are receiving preferential treatment under the terms of the settlement, there is no reason to give significant weight to their opinions.  Class counsel and the class representatives have a conflict of interest due to their heavy financial incentive to push for the proposed settlement.

The District Court effectively ignored the admonition of this Court in *Greenberg* that "unlike in virtually every other kind of case – in class action

29

settlements the District Court cannot rely on the adversarial process to protect the interests of the persons most affected by the litigation – namely, the class" as "there is always the danger that the parties and counsel will bargain away the interest of unnamed class members in order to maximize their own." *Greenberg*, 724 F.3d at 715, 717.  The District Court placed far too much weight on the opinion of class counsel that the settlement was reasonable.  This factor does not weigh in favor of approving the settlement.

### 5.     <u>The Reaction of Absent Class Members Demonstrates that the Proposed Settlement Is Unfair, Unreasonable, and Inadequate.</u>

Aetna's parallel lawsuit against Blue Cross provides significant evidence of the inadequacy of the proposed settlement.  As discussed above, Aetna alleged that it alone has suffered over $700 million in damages as a result of the MFN Agreements.  When trebled under federal antitrust laws, Aetna alleged that its individual damages claim against Blue Cross is over $2 billion.  Aetna's lawsuit was never dismissed or adjudicated on summary judgment and was recently settled on the eve of trial for an undisclosed amount.[9]

The District Court relied heavily on the fact that out of the seven million potential class members, only 1,518 opted out of the settlement.  Op. at 29, RE

---

[9] The Self-Insured Appellants cannot evaluate the strength of Aetna's claim because, just like in this case, the District Court allowed virtually all of the substantive documents in the Aetna case to be filed under seal in their entirety.

30

213, PgID 6997.  However, this does not prove that the settlement is in the best interest of class members.  Rather, it demonstrates that antitrust litigation is very expensive to pursue on an individual basis, such that only large insurers (such as Aetna) would have a financial interest in opting out of the class action process. Indeed, in addition to Aetna bringing its own lawsuit from the outset, the second-largest health care insurer in Michigan, Health Alliance Plan, opted out of the settlement and is pursuing its own separate antitrust claim against Blue Cross. *See Health Alliance Plan of Michigan v. Blue Cross Blue Shield of Michigan*, No. 2:14-cv-13788 (E.D. Mich. Oct 1, 2014).

What is far more troubling, and which the District Court did not address, is the meager number of claims that were actually filed.  Of the seven million estimated potential class members, less than 27,000 – or 0.38 percent of potential class members – actually filed claims to participate in the settlement.  Op. at 29, RE 213, PgID 6997.  This lack of participation in the settlement is highly probative of the fairness of the settlement to the potential class members, demonstrating not only that the claims process was unduly burdensome and deterred large numbers of potential class members from submitting claims, but that the settlement amount was so meager as to not be worth the time and energy of potential class members to fill out claims forms.  The benefits of the settlement inured to class counsel and the named Plaintiffs – not to the class members.

31

### 6.    Public Interest Factors Do Not Weigh in Favor of the Settlement.

The Court may also consider the broader interest of the public at large.  In this case, nearly every member of the public with an interest in the litigation is a class member.  Under these circumstances, the interests of the public are best analyzed by assessing the reasonableness of the settlement to the class.  This factor does not weigh in favor of approval of the settlement.

### 7.    There is a Substantial Risk of Fraud or Collusion in the Settlement.

The Self-Insured Appellants do not have a "smoking gun" that definitively demonstrates that the settlement is the result of fraud or collusion between Blue Cross and class counsel.  However, the combination of: (1) a very low settlement amount when compared to the massive potential liability faced by Blue Cross; (2) a distribution of almost half of the gross settlement amount to class counsel; (3) the provision of significant "incentive awards" to the named Plaintiffs that far exceed the amount that they would otherwise recover as class members under the settlement; (4) a burdensome claims process in which 99.6 percent of potential class members did not participate; and (5) the wholesale filing under seal of hundreds of documents that hindered the ability of class members to assess the merits of the lawsuit (and thus the fairness of the settlement), all create a substantial risk of fraud or collusion in the settlement.  The District Court failed to

carefully scrutinize the proposed settlement, which was particularly important for the District Court to do in light of these substantial risks.

## III.   THE COURT RECORD SHOULD HAVE BEEN UNSEALED PRIOR TO THE FAIRNESS HEARING.

Almost all of the significant documents necessary to assess the merits of the class members' claims, including a host of deposition transcripts, affidavits, and exhibits attached to court filings, were filed under seal in their entirety with the District Court and not available for review by class members.  There were not even redacted versions of these documents accessible by the public.

Class members have a compelling interest in access to the substantive information on which the fairness of the settlement can be assessed.  "There is a strong presumption that court files will open to the public."  *Smith v. SEC*, 129 F.3d 356, 359 n.1 (6th Cir. 1997).  "Only the most compelling reasons can justify non-disclosure of judicial records."  *In re Knoxville News-Sentinel Co. Inc.*, 723 F.2d 470, 476 (6th Cir. 1983).

This Court has explained the requisite showing to justify removing documents from public view and scrutiny:

> The public holds a qualified constitutional right of access to court documents that extends well beyond judicial opinions. The First Amendment access right extends to court dockets, records, pleadings, and exhibits, and establishes a presumption of public access that can only be overcome by specific, on-the-record findings that the public's interest in access to information is overcome by specific and compelling showings of harm…The district court [sealed these

pleadings] without any specific findings of harm, without any balancing of the public's interest against the parties', and with no evident attempt at narrow tailoring.

*Tri-County Wholesale Distribs., Inc. v. The Bellas Co.*, *No. 10-4202,* 2012 WL 248357, at *12 (6th Cir. June 29, 2012).

A court must make a "specific, on the record findings" that "closure is essential to preserve higher values and is narrowly tailored to serve that interest," prior to sealing any information. *Press-Enterprise Co. v. Superior Court*, 478 U.S. 1, 13–14 (1986). The Supreme Court has found that a court should only seal a record if there is a "substantial probability" that doing so will "prevent" the harm in question. *Id.* Similarly, such an order will only be narrowly tailored if no "reasonable alternatives" exist. *Id.*

This is particularly true in the context of a class action case, as class members' interests are directly affected by the outcome of the litigation. *See, e.g., In re Cedant Corp.*, 260 F.3d 183, 194, 198 (3d Cir. 2001)(the "right of public access is compelling" in the class action context, such that the "test for overriding the right of access [in a class action] should be applied . . . with particular strictness"); *United States v. Amodeo,* 71 F.3d 1044, 1049 (2d Cir. 1995)("the strong weight to be accorded the right of public access judicial documents was largely derived from the role those documents played in determining the litigants' substantive rights . . . and from the need for public monitoring of that conduct");

*Baker v. Dolgen Corp. Inc.,* No. 2:10-cv-199, 2000 WL 166257, at *2 (E.D. Va. Jan. 19, 2011)("the public has an interest in determining whether the court is properly fulfilling its duties when it approves a [ ] settlement agreement").[10]

In the class action context, numerous courts have recognized the importance of objectors having access to sealed documents upon which the settlement is based as part of the fairness hearing process. For example, in *In re BankAmerica Corp. Securities Litigation*, 210 F.R.D. 694, 706 (E.D. Mo. 2002), the United States District Court for the Eastern District of Missouri determined that due process was satisfied when objectors to a class action settlement were allowed "extensive[]" review of sealed documents. Similarly, in *In re Wireless Telephone Federal Cost Recovery Fees Litigation*, 396 F.3d 922 (8th Cir. 2005), the Eighth Circuit held that due process was satisfied where the objectors "were given all of the underlying critical information used by the parties to reach a settlement." *Id*.

The purpose of the fairness hearing is to allow the class members a meaningful opportunity to have their concerns with the proposed settlement heard by the District Court. This not only protects the due process rights of the class

---

[10] Indeed, although the Self-Insured Appellants did not request discovery, courts routinely grant class members the opportunity to conduct limited discovery with regard to the facts supporting the proposed settlement. *See, e.g., In re Domestic Air Transp. Antitrust Litig.*, 144 F.R.D. 421, 424 (N.D. Ga. 1992)("discovery should allow objectors meaningful participation in the fairness hearing without unduly burdening the parties or causing unnecessary delay").

members whose claims are being resolved by the settlement, but also serves an important role in aiding the District Court in assessing the fairness of the settlement as well.  Allowing objecting class members to meaningfully participate at the fairness hearing creates an adversary-like process that does not otherwise exist in class action settlements, thus mitigating the risk of fraud or collusion between class counsel and the defendant.  The District Court's statement that the Self-Insured Appellants in "evaluating their interests need not require the review of documents submitted by others" fails to recognize the purpose of the objection process and fairness hearing.  Op. at 8, RE 213, PgID 6976.

This important purpose of the fairness hearing is thwarted when the key documents on which one can assess the class members' likelihood of success on the merits are hidden from view from the class members, and therefore not subject to discussion and analysis at the fairness hearing.  Because the Self-Insured Appellants were not given access to the "underlying critical information used by the parties to reach a settlement," the objection process and the fairness hearing was ineffective and unfair.  The matter should be remanded to the District Court for a new fairness hearing, after the Self-Insured Appellants have had the opportunity to review the sealed information and incorporate that information into their objection and argument to the District Court.

## IV.    THE CLAIMS PROCESS IS UNREASONABLY BURDENSOME.

In order to submit a claim, insurers and self-insured plans were required to itemize in a claims table (1) the amount of healthcare services paid for; on (2) each date of service over an eight-and-a-half-year period; for (3) each of the approximately 130 hospitals in Michigan from which the class member purchased healthcare services.  Class Action Settlement Agreement Claims Form for Insurers or Self-Insured Entities, RE 148-1, PgID 4281-4287.  Individuals submitting claims were also required to itemize their claim by amount, date, and hospital over an eight-and-a-half-year time period.  *Id.*, Claims Form for Individuals, PgID 4273-4279.  The claims tables from insurers and self-insured entities were likely thousands of pages long.

Moreover, insurers and self-insured plans also were required to submit with their claims copies of hospital bills supporting <u>all payments</u> that the claimant includes in their claim.  *Id*.  In most cases, there are numerous hospital bills supporting each entry on the claims table.  This documentation requirement would result in self-insured plans and insurers having to submit thousands upon thousands, perhaps even millions, of pages of supporting documents with their claim.  Although individuals are not required to submit supporting documentation with their claim, the claims form states that individuals may be asked for

37

supporting documents at a later date and that "your claim may be rejected if any requested information is not provided."

There is no reason for the claims process to be this burdensome. Potential class members should have been able to submit a claim that aggregated their total payments to Michigan hospitals since 2006. Moreover, supporting documentation should not have been required for every payment the class member made to a hospital since 2006.

Rather, insurers and self-insured plans should have been treated the same way as individuals, in that supporting documentation should only have been required if a claim appeared on its face to be suspect. All claimants were already required to certify under penalty of perjury in their claim form that the submitted claim amount was true and accurate to the best of their knowledge. This should have been sufficient to minimize the risk of false or inflated claims being submitted.

The District Court seemed to recognize this concern, asking counsel for Blue Cross at the fairness hearing about the chilling effect on claims of the detailed amount of information required in the claims forms. While counsel for Blue Cross argued that the claims administrator has been directed to work cooperatively with class members who have contacted the claims administrator expressing difficulty gathering the information needed to support a claim, he also acknowledged that

"there may very well be some people who look at it [the claims form] and say I'm not going to bother, but we can't stop the apathy.  There is certainly the notion that some people are going to say I don't want to go through this trouble, but to the extent that they call [the claims administrator] and say it is too much trouble, we say file a claim, we will help you."  11/12/14 Tr., RE 199, PgID 6448-6449.

The miniscule participation role in the settlement is overwhelming evidence that the claims process was unduly burdensome.  Less than 0.4 percent of potential class members filed claims.  Put another way, over 99.6 percent of class members – over 6.9 million individuals, self-insured plans, and insurers – did not file claims under the settlement.

Moreover, for the millions of class members that are either insured directly by Blue Cross or are self-insured plans administered by Blue Cross, there is no reason for those class members to be required to submit a claims form.  Blue Cross has superior access to the hospital payment information concerning its insureds and the self-insured plans that it manages.  Blue Cross can make the calculations concerning the amount paid to hospitals by the class members whose health care Blue Cross manages without any additional information from those class members.

Indeed, this is exactly what happened with regard to the claim submitted by one of the Self-Insured Appellants.  Petoskey Plastics, Inc. ("Petoskey Plastics") is a self-insured plan administered by Blue Cross.  Petoskey Plastics did not have

access to the information necessary to fill out a claims form, and therefore asked Blue Cross for this information.  E-mails between Petoskey Plastics and Blue Cross, RE 161-5, PgID 4725-4727.  After waiting for several weeks for the information from Blue Cross, and after numerous telephone conversations and e-mails with Blue Cross representatives, Blue Cross ultimately provided Petoskey Plastics with the information necessary to fill out the claims form.  Petoskey Plastics then simply "regurgitated" this information provided by Blue Cross back to the claims administrator in its claims form, having wasted six hours of its time to do so.  11/12/14 Tr., RE 199, PgID 6417-6418.  There is absolutely no reason why class members who are insured by Blue Cross, or self-insured plans administered by Blue Cross, should have been required to go through this process in order to submit a claim under the settlement.

Incredibly, the District Court's Opinion approving the settlement failed to address at all these significant concerns with the claims process raised by the Self-Insured Objectors.  No explanation was offered by the District Court in its Opinion as to why this burdensome claims process was necessary, appropriate, or reasonable.

The burdensome claims process established by Blue Cross and class counsel can only be seen as a cynical attempt to discourage most class members from

submitting claims, in order to justify the extremely low settlement fund amount. This should not be countenanced by the Court.

## V. THE SETTLEMENT GIVES PREFERENTIAL TREATMENT TO THE NAMED PLAINTIFFS AND CLASS COUNSEL.

### A. THE SETTLEMENT PAYS AN EXCESSIVE AMOUNT TO CLASS COUNSEL AS A PERCENTAGE OF THE OVERALL SETTLEMENT.

Standing alone, an attorneys' fee award of up to $10 million to Plaintiffs' counsel would not be unreasonable in this case—if Plaintiffs' counsel had secured an appropriate settlement fund amount for the class. However, the substantial amount to be paid to class counsel as part of the settlement, when compared to the meager net amount to be paid to class members, creates a substantial conflict of interest between class counsel and the class members that raises a serious risk of fraud and collusion.

Under the District Court's order, class counsel is to be paid $10 million in attorneys' fees and reimbursed an additional $3.5 million for expenses, primarily related to class counsel's retained expert. As such, the settlement pays almost half of the $30 million settlement fund to class counsel. In comparison, the amount to be paid to class members—an average of $2 per potential class member—is perfunctory.

"The reality is that this settlement benefits class counsel vastly more than it does the consumers who comprise the class. The conclusion is unavoidable: this

settlement gives preferential treatment to class counsel while only perfunctory relief to unnamed class members." *Vassalle*, 708 F.3d at 755 (quotations omitted); see also *Greenberg*, 724 F.3d at 721. This Court has clearly held that "such inequities in treatment make a settlement unfair." *Vassalle*, 708 F.3d at 755. This is an independent reason for rejecting the settlement.

### B.   THE AMOUNT OF INCENTIVE AWARDS GIVES PREFERENTIAL TREATMENT TO THE NAMED PLAINTIFFS.

Under the District Court's Order approving the settlement, each of the four named Plaintiff organizations received incentive payments ranging from $20,000 to $45,000. In addition, the four named individuals received incentive payments of between $5,000 and $10,000 each. These incentive amounts grossly exceed the amount that the named Plaintiffs would otherwise recover as class members in the proposed settlement.

This Court has, on two recent occasions, rejected settlements in which incentive payments to plaintiffs grossly exceeded the amount that class members would otherwise recover under the settlement. Such an arrangement is unfair to the class and creates a conflict of interest, such that there is a "patent divergence of interest between the named representatives and the class." *Greenberg*, 724 F.3d at 722 (quotation omitted). "The incentive payments provide[ ] a *disincentive* for the class members to care about the adequacy of relief afforded unnamed class members, and instead encourage[ ] the class representatives to compromise the

interest of the class for personal gain." *Id*. (quotation omitted)(emphasis in original).[11] "Such inequities in treatment make a settlement unfair." *Vassalle*, 708 F.3d at 755.

As outlined above, even if the entire net settlement fund of $15 million was distributed solely to individuals (and not to insurers or self-insured entities), each class member would receive an average recovery of approximately $2. In contrast, the individual Plaintiffs are to be paid $5,000 to $10,000 each, and the self-insured entities between $20,000 and $45,000 each—but only if the settlement was approved. This is an independent reason for rejecting the settlement.

## CONCLUSION

The District Court failed to carefully scrutinize the class action settlement. This is particularly problematic given the numerous badges of potential fraud or collusion by the parties, including: (1) the low amount of the settlement fund in light of the massive potential liability faced by Blue Cross; (2) the payment of almost half of the gross settlement fund to class counsel; (3) the payment of incentive awards to the named Plaintiffs that far exceed the amounts they would otherwise receive as class members; (4) the establishment of a highly burdensome

---

[11] "Thus, to the extent that incentive awards are common, they are like dandelions on an unmowed lawn—present more by inattention than by design. And we have expressed a sensible fear that incentive awards may lead named plaintiffs to expect a bounty for bringing suit or to compromise the interest of the class for personal gain." *Greenberg*, 725 F.3d at 722 (quotations omitted).

claims process which deterred over 99.6 percent of potential class members from participating in the settlement; and (5) allowing the key documents that class members would need to assess the merits of their claims, and therefore assess the merits of the settlement, to remain completely under seal and unavailable for review by class members.  The settlement clearly is in the best interest of Blue Cross, class counsel, and the named Plaintiffs.  It is not in the best interest of the class members.

The Self-Insured Appellants request that the Court reverse the District Court's March 31, 2015 Opinion and Order Regarding Fairness Hearing, Order Approving Settlement, and entry of Final Judgment, remanding the case to the Eastern District of Michigan for further proceedings consistent with the Court's opinion.

<div style="margin-left:40%">

Respectfully submitted,

VARNUM LLP
Attorneys for Appellants

</div>

Date: July 10, 2015                    By: s/ Bryan R. Walters

<div style="margin-left:45%">

Bryan R. Walters (MI Bar #P58050)
Perrin Rynders (MI Bar #P38221)
Aaron M. Phelps (MI Bar #P64790)
Business Address, Telephone, and E-mail:
Bridgewater Place, P.O. Box 352
Grand Rapids, MI 49501-0352
(616) 336-6000
brwalters@varnumlaw.com
prynders@varnumlaw.com
amphelps@varnumlaw.com

</div>

## RULE 32(a)(7)(C) CERTIFICATION

Pursuant to FRAP 32(a)(7)(C), I hereby certify that the foregoing Appeal Brief (exclusive of content excluded pursuant to FRAP 32(a)(7)(B)(iii) and 6th Cir. R. 32(b)) contains 10,077 words, per the word processing software used to prepare the brief.

Date: July 10, 2015                    By: s/ Bryan R. Walters
                                            Bryan R. Walters (MI Bar #P58050)

## <u>CERTIFICATE OF SERVICE</u>

I, Bryan R. Walters, do hereby certify that on this 10th day of July, 2015, I electronically filed the foregoing document with the Clerk of the Court using the ECF system.

Date: July 10, 2015                    By: <u>s/ Bryan R. Walters</u>
                                       Bryan R. Walters (MI Bar #P58050)

## DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS

Appellants state that all relevant documents to this appeal are part of the electronic record in the Eastern District of Michigan, Southern Division.   To facilitate the Court's reference to the electronic record, said documents, as referred to herein above, are as follows:

| RECORD ENTRY # | DESCRIPTION OF DOCUMENT | PAGE ID# |
|---|---|---|
| 72 | Consolidated Amended Complaint | 884-935 |
| 80 | Motion to Dismiss Consolidated Amended Complaint | 1002-1018 |
| 102 | Opinion and Order Denying Motion to Dismiss | 1265-1273 |
| 127 | Defendant's Opposition to Motion to Add and Drop Named Plaintiffs for the Proposed Class | [sealed] |
| 133 | Motion for Class Certification and Appointment of Class Counsel | [sealed] |
| 139 | Defendant's Response to Motion for Class Certification and Appointment of Class Counsel | [sealed] |
| 140 | Motion to Exclude Expert Testimony of Dr. Jeffrey Leitziner | [sealed] |
| 148-1 | Class Action Settlement Agreement | 4221-4321 |
| 151 | Order Granting Preliminary Approval to Proposed Class Settlement | 4417-4425 |
| 161 | Joint Objection to Proposed Settlement | 4648-4735 |
| 161-1 | Center for Medicare & Medicaid Services Data on Hospital Care Expenditures, by State | 4705-4706 |

| 161-2 | Center for Medicare and Medicaid Services Data on Hospital Care Expenditures, by Source of Funds | 4707-4708 |
|---|---|---|
| 161-3 | Supplemental Disclosures of Aetna Inc. | 4709-4713 |
| 161-5 | E-mails between Petoskey Plastics and Blue Cross | 4725-4727 |
| 161-7 | Stipulated Motion and Brief to Dismiss Without Prejudice | 4732-4734 |
| 166 | Motion to Intervene for the Limited Purpose of Unsealing Records | 5199-5294 |
| 166-4 | Defendant's Opposition to Motion to Add and Drop Named Plaintiffs for the Proposed Class (redacted) | 5247-5251 |
| 166-5 | Motion for Class Certification and Appointment of Class Counsel (redacted) | 5253-5279 |
| 166-6 | Defendant's Response to Motion for Class Certification and Appointment of Class Counsel (redacted) | 5281-5286 |
| 166-7 | Defendant's Motion to Exclude the Expert Testimony of Dr. Jeffrey Leitinzer | 5288-5294 |
| 169 | Plaintiff's Motion for Final Approval of Settlement | 5301-5395 |
| 199 | 11/12/14 Transcript of Fairness Hearing | 6361-6450 |
| 213 | Opinion and Order Regarding Fairness Hearing | 6969-7017 |
| 219 | Notice of Appeal | 7034-7035 |

9495343_1.docx